**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25-cr-10460-JEK |
| | ) | |
| ALEX BOU | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Alex BOU was arrested while attempting to meet a 15-year-old girl for commercial sex. On the day they arranged to meet, BOU spent roughly two hours exchanging numerous text messages with her. Those communications demonstrated, in explicit detail, both the age of the girl and BOU's intent and willingness to pay to have sex with her notwithstanding the fact that she was a minor.

In fact, there was no underage girl and law enforcement officers were waiting for BOU when he arrived at the residential address the "girl" had texted him. He was arrested and charged by complaint with attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and 1594(a). On January 15, 2026, BOU waived indictment and pleaded guilty to an Information charging him with use of interstate facilities to transmit information concerning a minor, in violation of 18 U.S.C. § 2425. Dkt. 10; 11; 18-19. The defendant's sentencing hearing is scheduled for April 17, 2026, at 2:00 p.m. Dkt. 20. Pursuant to the plea agreement signed by the parties, Dkt. 11, BOU agreed to be sentenced to a prison sentence between 48 and 60 months. For the reasons set forth below, the Government asks the Court to sentence BOU to 60 months of incarceration, 36 months of supervised release, a mandatory special assessment of $100, and a fine within the sentencing guidelines range.

## I.    OFFENSE CONDUCT

Beginning on August 17, 2025, BOU sent a text message to the phone number listed on a commercial sex advertisement posted on a website accessible through the internet. The advertisement did not state the age of the person who would engage in commercial sex activities, but contained photographs of the clothed chest, bare torso, and clothed waist of a young-looking female along with language that included the following:

> Imm a beautiful flower ready to bloom, a cherry ready to blossom.
> [E]nd out the summer with me even tho im always shining

Unbeknownst to BOU at that time, however, the advertisement had been posted to the commercial sex website by law enforcement. The phone number listed on the commercial sex advertisement was a phone number used by an undercover agent ("UA") to communicate with potential sex buyers. Communications over the UA's phone number were monitored by law enforcement.

BOU used his cellular telephone to send a series of text messages to the number on the commercial sex advertisement, including an initial text that asked, "u available?" The UA controlling the phone replied that she would be available to meet with BOU two days later, on Tuesday, August 19. Text communications between BOU and the UA were recorded and are attached as Exhibit A.[1]

On Tuesday, August 19, BOU and the undercover agent exchanged additional electronic messages back in forth, the purpose of which was to arrange the details of a commercial sex "date."

---

[1] The text messages in Exhibit A are listed in reverse chronological order, that is, the oldest communications are at the end and the most recent communications are at the beginning. Messages sent from BOU's cellular telephone show the phone number in green; messages sent from the UA's cellular telephone show the phone number in red.

Their communications included discussion of where they would meet, how much time BOU wanted with her, whether or not he wanted to wear a condom, and the price for sex with her both with and without a condom. See Ex. A at 6-7. Specifically, those electronic communications included the following:

```
BOU:  Where u located
BOU:  So I kno distance
BOU:  And nothing bad gonna happen at u house? I kno im a stranger
BOU:  U taking long to respond u there?
UA:   im in charlestown, im getting ready lol
```

(Ex. A at 7);

```
UA:   what time us wanna come?
BOU:  Like 6
BOU:  But how much
BOU:  But u don't got work today?
UA:   what do u want and how long do u wanna book. ?
BOU:  30 mins
BOU:  Just wanna fuck
```

(Ex. A at 6); and

```
UA:   do you want no condom or condom ?
BOU:  No
BOU:  I don't want kids either
BOU:  Please
UA:   extra
UA:   lol
BOU:  So was [sic] the number
UA:   $125 condom $175 no condom
BOU:  Ok
UA:   which one babe
BOU:  175
```

(Ex. A at 6).

Shortly thereafter, the undercover agent texted BOU that she was only 15 years old. BOU responded by asking whether or not she had had sex before. Specifically:

```
UA:   im a little younger than my ad so don't be mad
UA:   but im not gonna hurt u lol
```

3

> UA:    im tiny
> BOU:  Was [sic] age?
> UA:    its just me here
> BOU:  [Questioned "Was age?]
> BOU:  Age?
> UA:    i dont want u to be mad lol
> BOU:  Go ahead
> UA:    15
> UA:    [blank]
> BOU:  Ok are you a virgin?
> UA:    no lol
> BOU:  Ok
> BOU:  Are u cool wit [sic] me 22?

(Ex. A at 5).

Shortly after learning her age, BOU explained that he was worried about getting into trouble. When pressed why, he stated that it would be because he was having sex with an underage girl. In particular:

> BOU:  I mean I don't want to get in trouble
> BOU:  But just for service and I'm gone
> UA:    why would u get in trouble
> BOU:  Cause I'm fucking under age girl

(Ex. A at 4-5).

BOU texted the UA to confirm that she was using birth control and to ask for her street address but the UA explained she would wait until he was in Charlestown before giving him the full address.

> BOU:  Are u on birthcontrol [sic]
> UA:    yupp
> BOU:  So I know if I can cum inside or not
> BOU:  Ok bet
> BOU:  Was [sic] address
> UA:    how far ru from ctown ?
> BOU:  35 mins
> UA:    go to monument restaurant, when ur there I give u the real addy
> UA:    Im 2 min from There

(Ex. A at 3-4).

4

Approximately fifteen minutes later, BOU tried calling the UA's phone number and was unable to connect with her. UA explained she would call him back, and approximately five minutes later they spoke over the phone. Ex. A at 2-3. Their conversation was recorded. During their call, BOU asked the UA if she was really 15 years old, stated that he was nervous but was on his way, and was approximately 35 minutes from her. The UA told him to text when he was five minutes away.

Roughly 30 minutes later, BOU resumed sending text messages with the UA asking about her height. The UA asked if he was close, and he stated that he was approximately 15 minutes away. The UA told him to let her know when he was five minutes away and when he reached the Monument Restaurant. Once BOU texted that he had reached the restaurant, the UA sent BOU her street address:

    UA:    us close ?
    BOU:   Ye
    UA:    eta ?
    BOU:   15
    UA:    okieeee lmk when 5
    BOU:   Don't know where to park
    UA:    i havent given u the addy babe ?
    UA:    are u at monument restaurant?
    UA:    if u are then ill give u the real addy. Theres parking infront of my house
    BOU:   Ye
    BOU:   Please take care of me
    UA:    I am daddy
    UA:    ███████████ st
    UA:    Txt me when ur here ill come down and meet u at the door babe

(Ex. A at 1-2).

BOU wrote, "██ right" to confirm her address. Ex. A at 1. Shortly thereafter, law enforcement observed BOU park and exit his vehicle near ████████ Street in Charlestown. As he began to approach the door to that address, law enforcement officers approached him. He

appeared started, took a step, then stopped and said words to the effect of, "I did something stupid."

He was placed under arrest.

After his arrest, BOU was given his Miranda warnings and agreed to speak with law enforcement. His statement to law enforcement was recorded. In the course of his statement to law enforcement, BOU acknowledged that he went to that address to meet a minor for sex. He also agreed to allow law enforcement to search his cellular telephone. Investigators subsequently confirmed that BOU's cellular telephone matched the phone that had been in communication with the UA.

II.    THE CHARGES AND PLEA AGREEMENT

On August 20, 2025, the defendant was charged by complaint with attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and 1594(a). On January 15, 2026, the defendant waived indictment and pleaded guilty to a one-count Information charging him with use of facilities to transmit information about a minor, in violation of 18 U.S.C. § 2425. As described in both the PSR and the plea agreement between the parties, the maximum statutory penalties for that offense are as follows:

*Count One (Use of Interstate Facilities to Transmit Information about a Minor)*

    a.  Incarceration up to five years;
    b.  Supervised release for up to three years;
    c.  A fine of up to $250,000;
    d.  A mandatory special assessment of $100;
    e.  Restitution; and
    f.  Forfeiture to the extent set forth in the Information.

Under the terms of the plea agreement signed by the parties, if the Court accepts the plea agreement the maximum and minimum penalties for BOU are as follows (Plea Agreement ¶5):

    a.  Incarceration for up to 60 months but not less than 48 months;

6

    b. A fine within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures, unless the Court finds that BOU is not able, and is not likely to become able, to pay a fine;

    c. 36 months of supervised release;

    d. A mandatory special assessment of $100 which BOU must pay to the Clerk of the Court by the date of sentencing;

    e. Restitution to be determined at sentencing; and

    f. Forfeiture as set forth in Plea Agreement ¶ 7.

III.    GUIDELINES ANALYSIS AND CRIMINAL HISTORY

In the plea agreement, the parties calculated BOU's Total Offense Level is **25**. Plea Agreement ¶ 4. In the final PSR, the USPO calculates BOU's Total Offense Level as **23**. PSR ¶¶ 24-33; 64. The discrepancy results from the USPO's determination that the 2-level enhancement pursuant to USSG § 2G1.3(b)(4)(A), agreed to by the parties in the plea agreement, Plea Agreement ¶ 4(c), is inapplicable here. PSR ¶ 64. The U.S. Probation Office calculated BOU's criminal history as category I, which is not disputed. Accordingly, as calculated by the parties, BOU's guidelines range is **57-71** months; as calculated by the USPO, his guidelines range is **46-57** months.

IV.    18 U.S.C. § 3553(a) FACTORS

    *a. The Nature and Circumstances of the Offense*

The nature of BOU's offense is horrifying: he was ready and willing to pay $175 to have unprotected sex with a 15-year-old girl. PSR ¶¶ 12-13. This was not a spur of the moment decision or a rash impulse; rather, from the time the undercover agent told BOU that she was 15 (at approximately 5:15 p.m., Ex. A at 5), BOU had over 90 minutes and a long drive to her residence to change his mind and to choose not to meet with her. Despite unambiguous evidence that he understood at that time the wrongfulness paying a minor for sex, he continued on to her address. Furthermore, even after learning that she was only 15, his text messages demonstrate that he remained focused solely on any possible risks *to him*: whether *he* would be safe when meeting

with her ("I'm the one going to a random stranger house. I just want to be safe"; "Please take care of me"; and "Please don't do nothing bad 2 me"); whether *he* would get in trouble ("I mean I don't want to get in trouble . . . Cause I'm fucking under age girl"); and whether *he* needed to worry about her getting pregnant ("Are u on birth control . . . So I know if I can cum inside or not").

  b. *The History and Characteristics of the Defendant*

  The defendant had no criminal history prior to his arrest for this offense. PSR ¶¶ 35-41. He lives with his family, PSR ¶ 45, is unmarried and has no children, PSR ¶ 48, and has no history of substance abuse. PSR ¶53. He has some college education and is currently employed. PSR ¶ 54-55.

  c. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

  A significant sentence here is necessary given the gravity and seriousness of BOU's offense. The defendant understood that he was going to meet a 15-year-old girl who was alone in her house and whom he intended to pay for sex. Sex trafficking of minors is an incredibly serious offense, one for which Congress has legislated significant penalties including a ten-year mandatory minimum prison sentence. Here, to be clear, BOU has pleaded guilty to a different offense (namely, use of interstate facilities to transmit information about a minor) but as the offense conduct set forth in the presentence report demonstrates, BOU's actions warrant a significant period of incarceration.

  d. *The Need for the Sentence to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant*

  Sex trafficking of minors, a crime facilitated by the easy transmission of information concerning minors over the internet and on commercial sex websites, remains distressingly widespread. Respectfully, this Court should impose a significant prison sentence on BOU to ensure

not only that he never again seeks to engage in commercial sex with minors, but to deter others who might seek to do the same. It is crucial to send a message to others engaging in such conduct that there will be dire consequences for their offenses against minors. Sex traffickers often believe that they will not be held accountable for their actions, because they are convinced that their victims will be afraid to speak with law enforcement, or that they will be unwilling to show up in court to testify, or that they will not trust the criminal justice system to work on their behalf. A significant sentence of incarceration here is necessary to send a strong message of respect for the law, to encourage victims in other cases to come forward with information about sex traffickers, and to deter other individual from committing such offenses in the first place.

V.      CONCLUSION

For the reasons set forth above, the government respectfully recommends that the Court impose a sentence of 60 months of incarceration, 36 months of supervised release, and a fine within the sentencing guidelines range.

Respectfully submitted,

LEAH FOLEY
United States Attorney

*/s/ Craig Estes*
Craig Estes
Assistant United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

Dated: April 10, 2026

9

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Craig Estes*
Craig Estes
Assistant U.S. Attorney