**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
| --- | --- |
| **UNITED STATES**<br><br>**v.**<br><br>**ALEX BOU** | **Docket No. 25-CR-10460-JEK** |

### Alex Bou's Sentencing Memorandum

Alex Bou is only 22 years old. He grew up in a sheltered home in Lawrence after the death of his father when he was 6 years old. His life trajectory was not one that foreshadowed serving time in a federal prison. He now faces very serious and significant consequences for his conduct in the charged offense. He acknowledges his conduct was criminal and accepts responsibility for his actions that bring him before the Court.

This sentence represents a sad outcome for a still young man who experienced his own struggles up until this point in his life. Mr. Bou's actions in this case involved dissociated, immature thinking and careless disregard for their impact. Upon confrontation by law enforcement, he fully admitted those actions and his regret, permitting the examination of his phone and car.

His conduct must be considered against the backdrop of his childhood, one that was interwoven with significant challenges – not just his father's tragic death – but unmarked by any criminal conduct.

This Court bears the solemn responsibility of determining a just sentence for this individual, based on all the relevant sentencing factors. Here, Mr. Bou recommends a significant sentence that not only provides adequate punishment, but one that is tempered with a focus on meaningful rehabilitation. In light of Mr. Bou's personal history and in consideration of the purposes of sentencing, he respectfully requests that this Court impose a sentence of 48 months in this case, the

low-end of the parties' plea agreement range. A sentence of 4 years custody is an appropriate balancing of the seriousness of the offense and as well as the personal history of Mr. Bou himself, and is consistent with the factors set forth in 18 U.S.C. § 3553(a) and is sufficient but not greater than necessary to achieve these goals. *See, e.g.*, United States v. Booker, 543 U.S. 220, 268–69 (2005); United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008).

## I.    Background, History, and Characteristics

Mr. Bou grew up in Lawrence, Massachusetts. Mr. Bou's mother emigrated from Cambodia to the United States as a young woman, bringing with her a daughter from a previous relationship. She married Mr. Bou's father, who also emigrated from Cambodia, and they welcomed three more children into their lives together.

████████████████████████████████████████████████

████████████████████████

Mr. Bou remembers his early years fondly – a feeling of love in the home. Both his mom and dad worked together to raise their blended family of two rambunctious boys and an older and younger daughter. Mr. Bou has few specific memories of his father, but can picture his dad play wrestling with him, and treating his sister like a princess. His memories are fleeting because his father was taken from him when he was so young.

Mr. Bou's father was active and liked to jog from home to work in nearby Methuen and back each morning and evening. When Mr. Bou was just six years old, a drunk driver[1] struck and killed his father while he out enjoying one of his solo runs one morning. This tragedy deeply changed the course of the family's life as their entire world was uprooted with this loss. Mr. Bou was in kindergarten when he learned this devastating and confusing news. His memory of his father's funeral is that he tried not to cry or show any emotion during the ceremony. This became somewhat of a theme for the family going forward – push away the feelings and move forward.

On a simple level, the family was not prepared financially for this loss. Their housing became mired in disputes with an ex-wife of his father. Mr. Bou's mother had to find work outside the home, but was unable to find steady employment that covered the family's expenses. Mr. Bou recalls feeling hungry as a child, and remembers taking any extra food at school that he could find and hiding it in his backpack so that he could bring it home to eat. He was a very skinny child, from childhood into his teenaged years – his memory is that he weighed just 50 pounds in eighth grade.

His mother grew more and more protective over her son as he got older. Her protective instinct was rooted in response to the death of his father, but also because their neighborhood was characterized by frequent physical violence. In turn, Mr. Bou himself went inward. He spent much

---

[1] The driver pled guilty and received a sentence of 3 to 3½ years in state prison.

of his time in his room playing video games, because his mother did not feel comfortable with him playing around outside. Mr. Bou grew up in this protective cocoon without experiencing many of the developing freedoms that are an important aspect of adolescent years. Instead, he remained deeply isolated. He did not participate in any counseling to address the loss of his father, and instead experienced understandable periods of depression that were never formally treated.

In high school, Mr. Bou tried to work on himself. He was always a good student, He continued to experience hunger and remained very skinny compared to his peers. He spent hours at night on the internet reading websites devoted to weight lifting routines to build muscle. He concentrated on learning how to "bulk up" and did in fact begin to gain weight as he practiced lifting at the school gym. At first, he struggled even to lift the bar off the ground to his waist. He kept going back to the gym each afternoon and gradually was able to add weight to the bar, a little bit at a time. His skinny frame began to take on muscle, and he felt pride at this transition in his body and how it made him feel. He felt like his peers were recognizing him more, rather then perceiving him as a "tiny kid" in the school.

At home, his family continued to struggle with having enough money to cover the bills, expenses, and to have adequate food. Mr. Bou recalls trying to just take care of himself, eating at school, working out, and coming home to his bedroom. He had trouble expressing his feelings to his family, including the stress he felt about his own health issues. As a kid, he was supposed to wear an eye patch to strengthen the muscles in this eye, but he rarely followed through, and his mother did not do much to intervene and enforce these practices. By high school he felt even more self-conscious of his eye. He learned that the course of treatment, after years of neglect, would be far more expensive to address than an eye patch – contacts, or even surgery. He knew that his family could not afford any other bills, so he looked on the internet for other at home strategies he could do

to strengthen his eye and began wearing his eye patch in his bedroom when he was home. These attempts did little to remedy the problem by this point.

Mr. Bou's life turned even more inward during his junior year of high school, when COVID altered his experience. He no longer had a regular routine outside the home, for school or working out. He became relegated to his house, which meant his computer and his bedroom. He had less opportunity for socialization or learning the skills of communicating with peers during these critical years at the end of high school. The remainder of his junior year was fully remote and much of senior year was spent in virtual learning spaces.

Following graduation, Mr. Bou continued to live in the family home with his mother and siblings. He began classes at Middlesex Community College but only completed one semester before leaving to find a job and earn some money to help support his family. He worked continuously at Wendy's, Domino's, and a warehouse, before being hired at a technology company in Beverly. Mr. Bou has worked there ever since up until this day.

### II.    Nature and Circumstances of this Offense

The nature and circumstances of the offense are described in detail in the Presentence Report at ¶¶8-19. Mr. Bou was engaging in communications with a girl who he believed was an adult (in reality, an agent) who posted an advertisement on an internet site for commercial sex. He had become familiar with commercial sex postings having been introduced to them by a coworker who knew that he had no experience with girls and never had a romantic relationship. Later in the text message communications with the agent, "she" revealed herself to actually be 15 years old but experienced sexually. Mr. Bou continued the communications over text message regarding sexual activity, including making a plan to meet with the individual in person for that purpose. "She" texted Mr. Bou her address and provided instructions to text her again when he arrived so she could meet him at the door. As Mr. Bou approached the residence, law enforcement promptly stepped in and

confronted him. Mr. Bou waived his Miranda rights and immediately admitted to his conduct, with shame. He gave full answers to the agents' questions, leading to the current prosecution.

### III.    Pre-Sentence Report & Plea Agreement

The Presentence Report (PSR) calculates the total offense level as 23, after acceptance of responsibility, criminal history category I (zero points). The guideline range is therefore 46-57 months. The binding plea agreement requires a sentencing range of 48-60 months. Both parties advocate for a period of 3 years supervised release.

A.  Special conditions of supervised release

The PSR additionally proposes "special conditions" of supervised release on pages 22-24 of the report. Mr. Bou has no objection to continued mental health counseling, proposed at Special Condition 1. Certain proposed conditions of supervision, however, are unjustifiably restrictive under the relevant standard and bear little, if any, relationship to the offense. For this reason, the defense objects to several of the conditions of supervised release proposed by probation in the Pre-Sentence Report. Under 18 U.S.C. §3583(d), the court may order special conditions of supervised release, only to the extent that such conditions:

(1) are reasonably related to (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) are designed to afford adequate deterrence to criminal conduct, (c) protect the public from future crimes of the defendant, and (d) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

(2) involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(3) are consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a). *See also* U.S.S.C. §5D1.3(b).

Appellate courts, including the First Circuit, have criticized District Courts for not being more thoughtful in imposing special conditions of supervised release. For example, in <u>United States v. Hinkle</u>, the First Circuit vacated certain conditions of supervised release and criticized the sentencing court for taking a "broad-brush, untailored approach to sculpting the conditions of supervised release." <u>United States v. Hinkel</u>, 837 F.3d 111, 125 (1st Cir. 2016). In <u>United States v. Kappes et al.</u>, the Seventh Circuit said, in remanding a case for resentencing, "perhaps in certain cases, only a small number of well-tailored discretionary conditions may be all that is necessary to accomplish the purposes of supervised release. A comparatively small number of conditions might also make compliance easier on defendants and supervision easier on understaffed probation departments." 782 F.3d 828 (7th Cir. 2015). Here, it is

<u>Special Condition 2</u>. <u>Registration</u>

Here, it is not immediately clear that the count of conviction is a "like violation" to the enumerated offenses under M.G.L. c. 6 s. 178C which trigger registration Thus, the defense suggests any condition include the added language: "If a final determination is made by the relevant sex offender registry board that he has a duty to register, then the following applies."

<u>Special Condition 3.-4.</u><u>Treatment/Assessment and Polygraph:</u>

Mr. Bou does not object to an <u>evaluation</u> to determine whether he poses any risk requiring this level of treatment. Until such an evaluation occurs and a professional evaluator reaches  a conclusion that treatment including polygraph examination is clinically appropriate, the court should decline to include rigorous additional conditions such as polygraph examinations.

<u>Special Condition 5-6-7-8, 9. Computer/Internet</u>

Conditions that monitor Mr. Bou's access to images on the internet are not sufficiently related to the present charges and are overly restrictive. There is no indication that Mr. Bou was viewing any inappropriate images, and the charges do not relate to such conduct.

Additionally, Mr. Bou objects to objects to the portion of this proposed special condition which states, "Any such device should not be used to knowingly access or view sexually explicit materials as defined in 18 U.S.C. §2256(2)(A)."

The definition of "sexually explicit conduct" referenced in 18 U.S.C. §2256(2)(A) is:

> "actual *or simulated* – (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person." (emphasis added)

The defense objects to the prohibition on the viewing of "any images or content of a sexual or otherwise inappropriate nature." Such a prohibition is vague and susceptible to many subjective differing interpretations, and can include restriction on his access to legal pornography and other types of communications with consenting adults. *See* United States v. Medina, 779 F.3d 55 (1st Cir. 2015) (vacating condition of supervised release that prohibited the defendant from accessing adult pornography where there was no link between the defendant's sex offense and adult pornography); United States v. Perazza-Mercado, 553 F.3d 65 (1st Cir. 2009) (finding no evidence in record justifying ban on defendant's possession of all forms of pornography where there was no suggestion that he had abused or even possessed pornography in the past, much less that it contributed to his offense or would be likely to do so in the future).

In both Perazzo-Mercado and Ramos, *supra*, the First Circuit Court of Appeals vacated a condition of supervised release barring the viewing of adult pornography. In suggesting these conditions, the Probation Department carries a burden to show that such a prohibition is

reasonably related to forwarding the goals of supervised release and is related to the nature and circumstances of the offense and the history and characteristics of the defendant. "A condition with no basis in the record or with only the most tenuous basis, will inevitably violate §3583(d)(2)'s command that such conditions involve no greater deprivation of liberty than is reasonably necessary. The court in <u>Ramos</u> noted at footnote 28 that "the presentence report indicates that Ramos….viewed adult pornography in the more recent past. However, the government does not argue that such a fact distinguishes this case, and there is no discussion of this point in the district court's sentencing explanation. Moreover, nothing in the record justifies, as far as we can tell, the conclusion that viewing adult pornography was a habit that 'contributed to his offense or would be likely to do so in the future.'" 763 F.3d at 64, *quoting* <u>Perazza-Mercado,</u> supra at 553 F.3d at 76.

<u>Special Condition 10-11- Contact with minors</u>

Similarly, the defense objects to conditions restricting any contact with anyone under the age of 18 based on this offense of conviction. There is insufficient evidence in this record to suggest that Mr. Bou has any predisposed deviant interest in individuals under the age of 18 to support the imposition of such a broad condition.

<u>Special Condition 12: Employment/Third Party Risk</u>

The defense suggests that this condition is overly restrictive and not sufficiently related to the conduct to warrant imposition, and critically, may actually act as contrary to the goals of rehabilitation and maintaining employment.

### IV.    <u>Sentencing Goals and Appropriate Sentence</u>

Pursuant to 18 U.S.C. §3553(a)(2), the court must consider the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and to provide

just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Here, a sentence of 48 months followed by 3 years of supervision comports with each of the sentencing criteria: it is sufficient, but not greater than necessary, to achieve the sentencing goals under 18 U.S.C. § 3553(a)(1). Any longer period of incarceration will be far greater than what is necessary to achieve the sentencing goals for this individual. United States v. Kimbrough, 128 S.Ct. 558 (2007); United States v. Booker, 125 S.Ct. 738 (2005); United States v. Martin, 520 F.3d 87 (1st Cir. 2008); United States v. Rodriguez, 527 F.3d 221 (1st Cir. 2008).

### (A) Seriousness of the offense, respect, just punishment, deterrence

There is no doubt that this crime is a serious offense: having continued contact with someone believed to be 15 years old for sex is conduct not to be tolerated in our community. But, four years in a federal prison is an incredibly serious outcome – for anyone – and especially for this young man with this background. Further, the overall sentence contemplates not only 4 years of isolation from the community, but incorporates a lengthy period of supervised release upon his return to the community, to help provide support and promote rehabilitation.

Mr. Bou has never spent any time in custody prior to his arrest in this case. He was released on conditions after his arrest in August 2025. Now, under the terms of the binding plea agreement, he faces significant time in a Bureau of Prisons facility. His isolated upbringing and resulting personality leaves him poorly equipped for a day-to-day life in a federal institution with more sophisticated defendants. Plainly, for this defendant a four year sentence is a sufficient sentence. Thus, the sentence expresses general deterrence to the community and the certainty

that others similarly engaged in inappropriate communications will face significant periods of time behind bars, even those with no criminal history whatsoever.

### (B) Rehabilitation and Treatment as a Primary Focus

Beyond mere incarceration, the sentence in this case must provide for "effective treatment" as required by section 3553(a)(2)(D). Here, Mr. Bou may benefit from continued counseling in the community, to address the feelings of isolation that he experienced throughout adolescence and into early adulthood that may have contributed to his involvement in this offense. Treatment models that use cognitive behavioral therapy methods and restorative justice concepts may be particularly helpful to Mr. Bou. Beyond that, support in continued employment and perhaps additional education will help Mr. Bou reenter the community in a meaningful way and to establish broader connections with peers.

### V.    Conclusion

Based on all of the circumstances in this case, the Court can properly find that a sentence of 48 month and 3 years of supervised release is minimally sufficient under the 3553(a) factors and sentencing goals. Mr. Bou will benefit from continued counseling in the community. He is prepared to follow all conditions of supervision, similarly to his compliance with all required pretrial release conditions. The requested sentence focuses on balancing both incarceration and careful monitoring in the community. It is a sentence that reflects the seriousness of the offense, provides just punishment, and promotes rehabilitation.  Mr. Bou asks that the Court include a judicial recommendation for FMC Devens so that any health needs can be best addressed while incarcerated.

Respectfully Submitted

Alex Bou
By his attorney,

*/s/ Cara McNamara*
Cara McNamara
BBO # 712096
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061
cara_mcnamara@fd.org

Date: April 13, 2026

## CERTIFICATE OF SERVICE

I, Cara McNamara, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 13, 2026.

*/s/ Cara McNamara*
Cara McNamara